[No. 5328.]
[No. 2969 C. A.]

## MONTGOMERY ET AL. v. WHITEHEAD ET AL.

1.  **Judgments Against Corporations—Stockholders Concluded.**

    In the absence of fraud and collusion, a judgment against a corporation, if the court has jurisdiction, is conclusive against the stockholders as to the validity and amount of the claim.—P. 322.

2.  **Garnishment—Judgment—Effect on Garnishee—Statutory Assignment.**

    A judgment against the garnishee operates as a statutory assignment of the debt in the hands of the garnishee, and the plaintiff becomes clothed with all the debtor's rights as to the debt in question.—P. 324.

3.  **Corporations—Right to Declare Dividends—Subsequent Creditors—Liability of Stockholders.**

    Creditors of a corporation, becoming such subsequent to the latter's apportionment of dividends, cannot hold the stockholders liable for the dividends so received.—P. 327.

4.  **Same—Existing Creditors.**

    The property of a corporation must first be appropriated to the debts of the company before any portion of it can be distributed to its stockholders.—P. 327.

5.  **Garnishment—Corporation—Dividends Declared While Owing a Judgment Debtor.**

    Where a creditor of one to whom a corporation was indebted garnisheed the latter and recovered a judgment against it, he is entitled to recover from the stockholders sums received by them as dividends during the existing debt.—P. 327.

*Appeal from the District Court of the City and County of Denver.*

*Hon. P. L. Palmer, Judge.*

Action by Andrew Whitehead and Edwin K. Whitehead against W. S. Montgomery, A. D.

Craigue, Eugene McCarthy, W. A. Otis & Co. and Frank E. Castello. From a judgment in favor of plaintiffs, defendants appeal.    *Affirmed.*

Messrs. TALBOT, DENISON & WADLEY, for appellants.

Messrs. THOMAS & THOMAS, and Mr. ANDREW WHITEHEAD, for appellees.

Mr. JUSTICE CASWELL delivered the opinion of the court:

This action was brought by appellees (as plaintiffs below) against appellants and other stockholders of The Independence Town & Mining Company to recover from them, as such stockholders, certain sums alleged to have been received by them as dividends, in fraud of the rights of plaintiffs as judgment creditors of the said mining company. It is further alleged that, prior to the 26th day of January, 1901, a judgment was rendered in the county court of Arapahoe county against one B. F. Montgomery in favor of the plaintiffs, and that on the 28th day of January, 1901, a garnishment writ in said case was served upon The Independence Town & Mining Company, and that the said mining company was, at the date of said service, indebted to the said B. F. Montgomery in the sum of thirteen hundred and thirty dollars ($1,330.00), and that the company had in its hands and in bank at that time the sum of nineteen hundred seventy-one dollars and fifty-four cents ($1,971.54); that prior to said time, while the debt of Montgomery was due and owing by it, the stockholders had divided the assets of the company, receiving certain stock in another company in payment therefor, and a large sum of money in cash, which had been distributed as dividends, and while the debt was still owing to said Montgomery

for which judgment was rendered in favor of the plaintiffs, and upon which, judgment was afterwards rendered in the garnishment proceedings in favor of these plaintiffs.

Separate answers were filed by various stockholders including appellants, which in effect admitted a distribution of the assets, but denied that such distribution was wrongful or unlawful or in fraud of any rights of the plaintiffs, and denied that the defendants, or any of them, misappropriated to their own use any sums of money or stock, as charged.

Upon the trial to the court, without a jury, the plaintiffs recovered judgment against various stockholders who had theretofore received dividends, limiting the amount of the recovery as against each of the defendants, from which judgment the appellants appealed.

Appellants present three questions for our consideration:

1.   The judgment rendered against The Independence Town & Mining Company, as garnishee, is not conclusive upon appellants as stockholders.

2.   Appellees, by their judgment against The Independence Town & Mining Company, acquired no rights to attack the payment of the stock and cash dividend complained of.

3.   The complaint does not state facts sufficient to constitute a cause of action.

As to the first question, the great weight of authority supports the doctrine, that the judgment, in an action by a creditor against a corporation, in the absence of fraud and collusion, pronounced by a court having jurisdiction, is conclusive of the amount and validity of the claim as against stockholders who are made defendants in a suit to reach corporate assets wrongfully withdrawn and in the hands of stockholders.—Cook on Corporations,

§§ 209-224, and cases cited; *Singer v. Hutchinson,* 183 Ill. 606; *Bissit v. Navigation Co.,* 15 Fed. 353, and note page 360, where many cases are cited upon this question; Clark & Marshall on Corporations, § 800, p. 2470, and many cases cited.

The last authority states the law as follows:

"It is a well settled rule that a judgment rendered by a court of competent jurisdiction is conclusive, in the absence of fraud or collusion, against the parties to the suit, and against all persons represented by the parties; and it is also well settled that a corporation represents its stockholders in all matters within the scope of its corporate powers transacted in good faith by its officers. In an action against a corporation by a creditor, the stockholders are represented by the corporation, within this principle; and it follows that the judgment rendered against the corporation therein, if the court has jurisdiction, is conclusive upon the stockholders, in the absence of fraud or collusion, in any collateral suits or proceedings against them, in equity or at law, to compel payment of the balance due on their stock."

At section 209, in Cook on Corporations, it is stated: "The authorities have firmly established the rule that, in the absence of fraud and collusion, judgments against the corporation, if the court had jurisdiction, are conclusive against the stockholders, as to the validity and amount of the creditor's claim."

And such is held to be the rule in this jurisdiction. Our attention is called to several New York cases by appellants. The decisions upon this question in that state are so conflicting, and we might say confusing, that we do not attempt to discuss them, and we do not follow them wherever they conflict with the authorities cited.

It follows that the trial court did not commit

error in admitting in evidence the original judgment against The Independence Company, nor in refusing to receive evidence to show that The Independence Company was not indebted to B. F. Montgomery at the time of the service of the garnishment writ.

In support of the second question presented, appellants claim that when the dividends were declared and the main portion of the assets of The Independence Company was divided amongst its stockholders, the company was free from debt and solvent; that it was not indebted to B. F. Montgomery at that time; that the rights of appellees as judgment creditors did not accrue until the service of the garnishment writ on January 28, 1901; that they were subsequent creditors as of that date and that their rights were not affected by the order declaring dividends, nor by the distribution of assets; that the garnishment was a new suit and all rights of plaintiffs were initiated by service of the writ therein.

So far as the company as garnishee is concerned, its rights were not affected by the service of the garnishment process. It stands in every respect in the same position that it would have been had the suit been begun by its own creditor.—Shinn on Attachment and Garnishment, § 487; *Ins. Co. v. Tabor,* 16 Colo. 531; *Sauer v. Nevadaville,* 14 Colo. 54.

So far as the relations of the plaintiffs to the debtor are concerned, a judgment against the garnishee operates as a statutory assignment of the debt in the hands of the garnishee, and the plaintiffs become clothed with all the debtor's rights as to the debt in question.—20 Cyc. 1139, and cases cited; Shinn on Attachment and Garnishment, § 613; Waples on Attachment, §§ 477, 478; *Smith v. Butler,* 80 Southwestern 581.

It is stated at §§ 477, 478, of Waples on Attachment (2d ed.), that the plaintiff is legally subrogated to the right of action which his debtor has for the recovery of property or credits due the debtor, and that the subrogation enables the plaintiff to reach property and credits of the debtor, in third hands, which rightfully ought to be made liable. It is a means of obtaining the ends of justice under circumstances which would favor the non-paying debtor if there were no such subrogation.

The authorities seem to be unanimous upon this question, and it is clearly the law that the plaintiffs in the garnishment suit in the case at bar became the assignees of the claim of Montgomery and were entitled to all the rights in respect to its collection which he had. After the service of the garnishment writ the claim could not have been assigned or transferred by Montgomery to the detriment of the plaintiffs.

It is alleged in the complaint that The Independence Company was indebted to Montgomery in July, 1900. It is admitted by the answer of appellants, as defendants below, that about July, 1900, the company was indebted to Montgomery in the sum of thirteen hundred and thirty dollars ($1,330.00) and more. It is not clear from the evidence in this case just when the indebtedness to Montgomery was contracted, but the record discloses that he received a credit on the books of the company on August 16th, 1900, for twenty-five hundred dollars ($2,500.00); that on July 30th, 1900, and pursuant to a resolution of the board of directors passed July 27th, 1900, cash dividends were ordered paid by the president and secretary of the company, and that the same were made payable August 20, 1900, and that such payments were made on and after that date and such dividends were received while the indebtedness to

Montgomery still existed, in whole or in part. The record discloses that on Aug. 18th, 1900, one thousand dollars ($1,000.00) was paid to Montgomery, and later on one hundred and seventy dollars ($170.00) more was paid to him, the last payment being January 14, 1901, and that at the time of the service of the garnishment writ upon the company there was still due and owing from the company to Montgomery thirteen hundred and thirty dollars ($1,330.00).

Appellants claim that the dividend having been declared prior to the 16th day of August, 1900, it is not shown that the company was indebted to Montgomery at the time of such order declaring dividends, and that the company at that time had a right to dispose of its property as it did.

We cannot agree with this contention. It was the payment of the dividends, and not the order declaring the same, which deprived the company's treasury of its funds. Had the order not been carried out Montgomery would be entitled to collect his debt from the company directly. By the act of declaring dividends and the future acts of the directors, the company became insolvent and the payment of the dividends so made was clearly in violation of the rights of Montgomery, and his rights in this respect determine the rights of the plaintiffs in this action.

The record further discloses that there was some five thousand dollars ($5,000.00) left in the treasury after the payment of such dividends, in cash aside from the stock, and that at the time of the garnishment writ there was some nineteen hundred dollars ($1,900.00) in cash, in the hands of the company, but it is further shown that this sum was paid out after such service, a large portion of it going to directors and stockholders of the company.

We do not discuss this phase of the case, because the judgment is against the stockholders who had received dividends on August 20, 1900, and because the evidence in this respect was introduced to prove the insolvency of the company.

Appellants urge that they had the right to declare a dividend as against subsequent creditors, and cite *Graham v. Railroad Co.,* 102 U. S. 148; *Hollins v. Brierfield Co.,* 150 U. S. 371, and other authorities. We quite agree with the rule contended for by appellants. It has heretofore been adopted as the rule of this court.—*Nix v. Miller,* 26 Colo. 203; *Jones v. Bank of Leadville,* 10 Colo. 464; *Breene v. Merchants Bank,* 11 Colo. 97. But the rule is not applicable to the case in hand. Montgomery is held to be an existing creditor at the time of the distribution of the assets, and all his rights inured by the garnishment judgment to the plaintiffs in this case. It has always been the law that the property of a corporation must first be appropriated to the debts of the company before any portion of it can be distributed to the stockholders of the company.—*Fogg v. Blair,* 133 U. S. 534; *Hollins v. Brierfield Co.,* 150 U. S. 371; *Buck v. Ross,* 68 Conn. 29; 57 Am. St. 60, and note the same, p. 63. See *Fishel v. Goddard,* 30 Colo. 147, disapproving *dicta* in *West v. Produce Co.,* 6 Colo. App. 467.

As to the third proposition of appellants, we think the complaint fully states a cause of action. There was no effort here to show that the capital stock of The Independence Company was being distributed. We think the complaint sets forth with sufficient certainty the existence of the company, the judgment against it in garnishment proceedings, its indebtedness to Montgomery and the fact that it divided its assets as dividends while such an indebtedness existed. It further appears from the record

in this case that, by virtue of the payment of such dividends, and the disposal of the remaining assets after that payment, the company became insolvent and had no treasury, and that it was a necessity to pursue the assets in the hands of the stockholders. There was ample evidence to support the judgment of the trial court, and we think the judgment was rendered under a proper interpretation of the law.

The judgment is affirmed.        *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concur.